15881

LEYSATH v. LEYSATH *ET AL.*

(40 S. E. (2d), 233)

*Mr. J. Wesley Crum,* of Denmark, for Appellant,

*Messrs. Carroll E. Summers,* of Orangeburg, and *J.&D. Carroll,* of Lexington, for Respondents,

*Mr. J. Wesley Crum,* of Denmark, for Appellant,

November 6, 1946.

MR. ASSOCIATE JUSTICE OXNER delivered the unanimous opinion of the Court.

Appellant, James E. Leysath, seeks in this action to have the Court set aside, because of its claimed invalidity, a tax deed executed by the delinquent tax collector of Orangeburg County to respondent Helen C. Leysath (now Helen C. Wheeler) on April 11, 1935, and recorded on the same day, and to require respondents to account for the rents and profits from the lands therein conveyed. The case was referred to the County Judge of Orangeburg County, as special referee, who filed a report in which he recommended that the tax deed be declared invalid and found that respondents were due to appellant the sum of $356.88 on account of the rents received from the property. On exceptions to this re-

port, the Circuit Judge held that the action was barred by the terms of Section 2827 of the 1942 Code because it was not brought within two years from the date the purchaser at the tax sale went into possession, and dismissed the complaint. This appeal followed.

The property conveyed in said tax deed consisted of two tracts of land aggregating 375 acres. By inheritance, appellant acquired the fee to one of these tracts, containing 150 acres, in 1915, and a life estate in the other tract, containing 225 acres, in 1925. Both tracts were properly assessed for taxation in appellant's name. Taxes for the years 1927, 1928, 1929, 1930 and 1931 were not paid and executions were duly issued. Under the terms of an act relating to Orangeburg County passed in 1932, 37 St. at L., page 1560, tax executions for these years were placed in the custody of the county treasurer and the taxpayer was permitted to pay these taxes in ten annual installments. Appellant failed to pay any of these installments and also failed and neglected to pay the taxes for the years 1932 and 1933. Executions for these two years were turned over to the delinquent tax collector. The assistant tax collector tried unsuccessfully to collect the delinquent taxes and warned appellant that if they were not paid, he "would have to levy". Finally, on March 16, 1934, he undertook to levy on the property by entering same and tacking on a tree a notice to the effect that by virtue of the tax executions, he had "this day levied" on the property of appellant, specifying the number of acres and the school district in which it was located, and would sell same "as provided by law after due advertisement on legal salesday in April, 1934". Appellant did not reside on either of these tracts; the 150 acre tract was unoccupied and a tenant of appellant resided on the 225 acre tract. In attempting to make this levy, the assistant tax collector was not armed with the tax executions; those for the years 1927 to 1931, inclusive, continued to remain in the custody of the county treasurer and those executions for 1932 and 1933 were not removed from the tax collector's office. The prop-

erty was sold on April 2, 1934, which was salesday for that month, to satisfy delinquent taxes for the years 1927 to 1933, inclusive, and bid in by the Forfeited Land Commission of Orangeburg County for the sum of $673.75, representing all taxes, penalties, and costs for the years mentioned and including an item of $35.94 as accumulated interest at the rate of 1% per month on the 1932 and 1933 taxes as authorized by the 1932 act heretofore mentioned. (The provision of this act relating to the collection of interest was later held to be unconstitutional by this Court in *Webster v. Williams, Tax Collector et al.*, 183 S. C., 368, 191 S. E., 51.)

During February, 1935, a few months prior to the expiration of the period of one year allowed by statute for redemption, the tax collector sent a notice by registered mail to appellant, stating that his land had been sold for delinquent taxes and unless redeemed by a certain date, a deed conveying the property would be made to the purchaser. Appellant admits receiving this notice. The property was not redeemed. Some time thereafter the bid of the Forfeited Land Commission was transferred to respondent, Helen C. Wheeler, who paid the County the sum of $717.75 and received deed to the premises on April 11, 1935. Apparently the purchaser was also required to pay the 1934 taxes which probably accounts for the difference between the bid of the Forfeited Land Commission and the consideration stated in the deed.

Appellant contends that the property was actually bid in and the purchase price paid by respondent, Horace H. Leysath, who is the father of Helen C. Wheeler, the grantee in the tax deed, and the husband of respondent, Vastine C. Leysath. But we think it is immaterial whether in this transaction Horace H. Leysath was acting as agent or trustee for his daughter or was acting for himself and took title in the name of his daughter. The purchaser immediately entered into possession of the property after the tax deed was made, collected the rents for the year 1935, and continued to re-

main in possession, collecting the rents each year, until November 5, 1940, at which time respondent Helen C. Wheeler conveyed the property to her mother, respondent, Vastine C. Leysath, who has since remained in possession. Considerable improvements, which will be hereinafter discussed, were made on the property after respondents went into possession.

■ Appellant challenges the validity of the tax sale upon the grounds (1) that the attempted levy on the property was not made by the tax collector, but by the assistant tax collector, who was not an officer vested with authority to make such levy; (2) that when making the levy, he was not armed with the tax executions; (3) that he did not seize and take exclusive possession of the property; and (4) that the item of accumulated interest amounting to $35.94 was improperly included in the tax executions. In *Vallentine v. Robinson,* 188 S. C., 194, 198 S. E., 197, a tax sale made by the collector of delinquent taxes for Orangeburg County was attacked upon substantially the same grounds and held invalid. We may, therefore, concede that the tax sale in question was invalid and that in a proceeding timely brought, appellant would have been entitled to have the tax deed declared void and set aside. The question is whether such action can now be maintained in view of the two-year limitation contained in Section 2827 of the 1942 Code. This section is as follows:

"In all cases of sale the sheriff's deed of conveyance, whether executed to a private person, a corporation or the sinking fund commission, shall be held and taken as *prima facie* evidence of a good title in the holder, and that all proceedings have been regular, and all requirements of the law have been duly complied with. No action for the recovery of land sold by the sheriff under the provisions of this article, or for the recovery of the possession thereof, shall be maintained unless brought within two years from the date of said sale."

■ It has been uniformly held in this State that all requirements of the law leading up to tax sales are to be regarded as mandatory and strictly enforced. They are intended for the protection of the taxpayer against surprise or the sacrifice of his property. Prior to the enactment of the above statute, as pointed out in *Shell v. Duncan,* 31 S. C., 547, 10 S. E., 330, the burden was upon the purchaser to affirmatively show that all preliminary steps required by the law regulating tax sales had been complied with. The difficulty of doing so proved in practice to be almost. impossible. The purpose of the first portion of this statute, making the tax deed *prima facie* evidence of good title in the holder, was to relieve the purchaser of this burden and require those seeking to impugn the conveyance to assume the burden of showing that some essential prerequisite required by statute had not been complied with. In speaking of the purpose of a limitation such as that contained in the latter portion of this statute, the Supreme Court, in *Redfield v. Parks et al.,* 132 U. S., 239, 10 S. Ct. Rep., 83, said: "Many of the states of the ,Union have enacted what are called 'short statutes of limitation', the object of which is to protect right acquired under sales of real estate for taxes. The general. purpose of these statutes is to fix a period of time running in favor of the holder under such tax-titles, after which the validity of that title shall not be questioned for any irregularity in the proceedings under which the land was sold. This object was generally attained by the enactment of short statutes of limitations, by means of which the party in possession under such defective titles can, by pleading this statute, make his title good".

■ It has been held that the two-year limitation in our statute is "a mere limitation on the assertion of a right of action existing at common law and independent of the statute" (*Jones v. Boykin,* 70 S. C., 309, 49 S. E., 877), which does not begin to run until the purchaser is put in possession. *Gardner v. Reedy,* 62 S. C., 503, 40 S. E., 947; *Glymph v. Smith et al.,* 180 S. C., 382, 185 S. E., 911.

■ It appears to be the general rule that a short statute of limitation of the kind under consideration does not apply where, by reason of some jurisdictional defect, the tax deed is absolutely void· upon its face; and perhaps the majority of the courts hold that the bar of the statute does not apply if there are jurisdictional or fundamental defects in the tax proceedings which render such proceedings absolutely void. However, in some jurisdictions a statute of this kind is more liberally construed in favor of the purchaser, and it is held that the statute applies in every case in which there has been possession under a deed which is not void on its face. But the courts following the majority rule are not in entire accord as to the jurisdictional grounds which render a tax deed absolutely void. In some states defects which in others are deemed jurisdictional are considered mere irregularities. Illustrative of a jurisdictional defect is the case of *Smith v. Cox,* 83 S. C., 1, 65 S. E., 222. In that case there was a duplicate assessment of the property. The owner paid the taxes assessed against him. Nevertheless, a tax execution was issued on the other assessment, which was in the name of one not the true owner, and the property sold. In an action by the owner to recover possession from the purchaser at the tax sale, the Court held that our statute did not apply. As stated in 51 Am. Jur., page 995, it seems to be generally held that "all defects, irregularities, informalities, errors, and·omissions in the antecedent proceedings of assessment, taxation, and sale, which are not jurisdictional, however grave and fatal to the validity of the tax deed in an action seasonably begun, are cured and foreclosed when the special statute has run the prescribed length of time". Annotations on the subject under consideration will be found in 27 L. R. A. (N. S.), 339, and 16 Ann. Cas., 1144.

■ We shall now consider the defects complained of by appellant in the present tax proceedings in the light of the foregoing principles. Although they were serious enough to have required the Court to set aside the tax deed in an action seasonably begun, we do not think that they can be properly

classified as jurisdictional defects within the purview of the rule which we have stated, but rather are among the irregularities which the statute in question was framed to cover and set at rest. Here there was a lawful assessment, the taxes were delinquent, and executions were properly issued. The general authority of the tax collector to sell property for delinquent taxes and the liability of the land in controversy to taxation having existed, there was no want of authority to put the taxing power in motion. There was a *bona fide* attempt to levy. The property was duly advertised and the sale was conducted in the manner required by law. The taxpayer had actual knowledge of the sale and was given an opportunity to pay the taxes prior to the expiration of the redemption period. The tax deed is not included in the record before us, but we may assume that it was regular in form and valid on its face. If the two-year limitation does not apply to defects of the character now under consideration, what purpose does it serve? If it only applies where the tax proceedings are regular in every respect, the purchaser would have no need of the protection which this limitation was designed to give. A statute of repose is not needed in favor of purchasers at valid tax sales. The very purpose of such a statute is to shut off inquiry into such defects as are now complained of, and confirm the tax deed in spite of them, and unless it does this it is nugatory.

The case of *Wilson v. Dove,* 118 S. C., 256, 110 S. E., 390, supports the foregoing conclusion. The action there was to set aside, as a cloud upon the plaintiff's title, a certain municipal tax deed upon the ground that the levying officer did not take exclusive possession of the property. The evidence disclosed that this officer did not take possession until the day of the sale and thereafter placed the purchaser in possession. The Court held that the action could not be maintained because the plaintiff was not in possession of the property at the time the action was instituted. It was further held that the action was barred by the two-year limitation. In reference to the section of the Code under consid-

eration, the Court said: "It is clear that to permit an action such as the one at bar, after the lapse of more than three years, the purchaser in the meantime being in possession, would be to practically annul the limitation provided therein".

In concluding our discussion of this phase of the case, it is perhaps unnecessary to say that this decision is confined strictly to the facts before us. We do not undertake to lay down a general rule defining those defects in tax proceedings which should be considered as mere irregularities, to which the statute under consideration would apply, and those which should be deemed jurisdictional, so as to render the statute inapplicable.

In order to simplify the consideration of the issues raised on this appeal, we have until now refrained from mentioning the question of fraud raised by appellant. He alleges in his complaint that during 1933 he suffered a stroke which incapacitated him from attending to his business; that upon receiving the notice heretofore mentioned from the tax collector in February, 1935, he called in his brother, respondent Horace H. Leysath, "and told him about said tax sale and made an offer that if he (Horace H. Leysath) would pay the taxes due by him (appellant) and redeem said property, that defendant (Horace H. Leysath) could have the rents and profits from said lands until said taxes with interest were paid, which said offer was then and there accepted by said defendant Horace H. Leysath". Appellant further alleges that he fully trusted his brother and, in accordance with said agreement, permitted him to collect the rents for five or six years when a demand for an accounting was made and refused; that thereafter in the fall of 1944 he first discovered that his brother, instead of redeeming said property, had purchased same from the Forfeited Land Commission and procured title in the name of respondent Helen C. Wheeler; and that this action was commenced several months after discovery of the alleged fraud.

Appellant contends that the two-year statute of limitations had not expired when this action was commenced because (1) the possession of Horace H. Leysath or his daughter was under the agreement mentioned and not by virtue of being a purchaser at the tax sale, and (2) the statute did not begin to run until the alleged fraud was discovered.

We shall now determine whether the proof sustains the charge of fraud. On direct examination appellant's testimony as to the agreement was substantially as alleged in the complaint. It will be observed that the alleged oral agreement is silent as to the payment of current taxes. When asked on cross-examination why he did not pay the taxes subsequently accruing on the property, appellant for the first time stated that his brother was also to pay the current taxes. The only witness corroborating appellant's testimony is his nephew, who testified that in February, 1935, when sixteen years of age, he, while in the kitchen, overheard appellant and Horace H. Leysath, who were in an adjoining bedroom, make said agreement. He stated that he was then living in appellant's home and was "kind of listening to business". Horace H. Leysath positively denied making any such agreement.

Although nothing was expressly said in the alleged oral agreement about possession, it is undisputed that Horace H. Leysath, either acting for himself or his daughter, immediately went into possession and thereafter rented the property and otherwise used it as his own. At the time of the sale only a few acres on the 150-acre tract were in cultivation. There were no buildings on it. Horace H. Leysath cleared about fifteen additional acres and enclosed a portion of this tract with a pasture fence. Only about 35 acres were in cultivation on the 225-acre tract. He also cleared about twelve additional acres on this tract and repaired the roof on an old house located on same and erected a chimney. The referee found the value of all these improvements to be approximately $150.00. The testimony further shows that after

respondents acquired possession, the land was considerably improved by good management. Horace H. Leysath placed "no hunting" signs on the property. Prior to the sale, appellant regularly returned this property for taxation. Thereafter he made no effort to do so and the tax returns were made by Horace H. Leysath in the name of his daughter, the grantee in the tax deed.

Although appellant's health has not been good since 1933, there is no evidence that he has since that time been confined to his home. He attended the trial and testified. Although under the alleged agreement the property was only to be redeemed and would remain in his name, he gives no explanation as to why after the execution of the tax deed he ceased making tax returns on the property. There is no testimony that he did not know of respondents' making the improvements heretofore mentioned on the property. The use of this property by respondents after the sale, which was known to appellant or in the exercise of ordinary diligence should have been known to him, is wholly inconsistent with his contention that Horace H. Leysath and his family had no interest in the property other than to collect the rents until Horace H. Leysath was reimbursed for the amount of taxes paid with interest.

It may not be amiss to state that the only other property owned by appellant in 1934 was a tract of 101 acres which was also sold for delinquent taxes at the same time that the two tracts in controversy were sold and deed thereafter made to his wife. No attack has been made on the proceedings leading up to the sale of this tract.

After careful consideration of the record, we are satisfied that appellant has not established the alleged fraud. This action was not commenced until more than nine years after the execution of the tax deed. We are in accord with the following conclusion reached by the Circuit Judge: "The sudden activity of the plaintiff (appellant) was not until after the defendants (respondents) had improved the land

by their work, good management and industry, and values of real estate had increased generally".

Finally, it is contended that Section 2827 of the Code only applies when the action is one for the recovery of land sold under tax execution or for the recovery of the possession thereof and would not apply to the cause of action stated in the complaint which it is said is one in equity to set aside the tax deed. Conceding, without deciding, that this is the proper construction of the complaint, it is difficult to see what benefit this position would be to appellant, as he would still be confronted with the two-year limitation in an action, which he would be compelled to institute, to recover possession of the property. *Wilson v. Dove, supra* (118 S. C., 256, 110 S. E., 390).

Judgment affirmed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES and TAYLOR concur.