675 S.E.2d 883

**WELLS FARGO BANK, N.A. Assignee and Successor in Interest to Fleet National Bank, Plaintiffs Below, Appellants,**

v.

**UP VENTURES II, LLC, Ironwood Acceptance Company, Palo Verde Trading Company, LLC, Jeffrey E. Hall and Annette L. Hall, Defendants Below, Appellees.**

No. 34265.

Supreme Court of Appeals of West Virginia.

Submitted: Feb. 3, 2009.

Decided: March 27, 2009.

**408**

Stephen L. Thompson, Esq., Charleston, WV, for Appellant.

Ronald J. Flora, Esq., Milton, WV, for Appellee.

KETCHUM, J.: [1]

In this appeal from the Circuit Court of Cabell County, we are asked to reverse an order granting summary judgment in favor of the purchaser of a parcel of residential property at a tax sale. The circuit court held that a suit against the purchaser seeking to set aside the tax deed, which was filed more than three years after delivery of the tax deed to the purchaser, is barred by the statute of limitation set forth in *W.Va.Code*, 11A–4–4(a) [1992].

After carefully reviewing the briefs, the record designated for appellate consideration, and the oral arguments of counsel, we affirm the lower court's decision.

## I.

### *Facts & Background*

Jeffrey and Annette Hall ("the Halls") bought a tract of residential real property in 1995.[2] After the Halls became delinquent for their 1998 property taxes, the property was sold at a sheriff's tax sale on November 9, 1999. Defendant Ironwood Acceptance Company ("the tax sale purchaser") bought the property at the tax sale for the sum of $1,565.81.

*W.Va.Code*, 11A–3–19(a) [1998] requires a tax sale purchaser to give the county clerk a list of persons who can redeem the property, and to request that the clerk serve these persons with a notice of their right to redeem the property. The statute states, in relevant part:

> At any time after the thirty-first day of October of the year following the sheriff's sale, and on or before the thirty-first day of December of the same year, the purchaser, his or her heirs or assigns, in order to secure a deed for the real estate subject to the tax lien or liens purchased, shall: (1) Prepare a list of those to be served with notice to redeem and request the clerk to prepare and serve the notice as provided in sections twenty-one [11A–3–21] and twenty-two [11A–3–22] of this article ...

The tax sale purchaser complied with this statute. On November 16, 2000, the tax sale purchaser provided the county clerk with a list of those persons and entities who were entitled to receive a notice of their right to redeem the Hall's property. The clerk prepared and mailed these notices on or about January 17, 2001, and Annette Hall received and signed for the Hall's notice to redeem on January 22, 2001. In accordance with *W.Va. Code*, 11A–3–22 [1995], the county clerk also

---

1. Pursuant to administrative order entered March 23, 2009, the Honorable Thomas E. McHugh, Senior Status Justice, was recalled for temporary assignment to the Supreme Court of Appeals of West Virginia under the provisions of Article VIII section 8 of the Constitution of West Virginia.

2. Neither party addresses how the Halls financed the purchase of the property in 1995.

published the notice to redeem in two local newspapers on three separate days.

Although the Halls received notice of their right to redeem, they took no action to redeem the property. Instead, after Annette Hall received and signed for the notice to redeem, she and her husband entered into a loan agreement with Fleet National Bank to borrow $84,500.00, secured by a first lien on the property. Plaintiff Wells Fargo Bank ("bank") is the successor in interest to Fleet. The loan was closed and a deed of trust was signed and entered into on February 21, 2001. The deed of trust was recorded with the county clerk on March 8, 2001. The delinquent taxes were not paid and the property was not redeemed when this loan was closed. When making the loan, the parties agree that the bank was unaware of the delinquent real estate taxes and unaware of the November 1999 sheriff's tax sale. The title abstract the bank had performed prior to the closing of the loan did not reveal the delinquency or the previous sale of the property at the sheriff's tax sale.

Two months later, on May 8, 2001, the county clerk delivered a tax deed conveying the property to defendant Ironwood, who recorded the deed on the same day. On August 13, 2001, Ironwood conveyed the property to defendant Palo Verde Trading Company, LLC. On September 9, 2003, Palo Verde conveyed the property to defendant UP Ventures II, LLC (hereafter collectively referred to as the "tax sale purchasers").

The bank paid the real estate taxes due on the property beginning in the second half of 2001 and continuing through the second half of 2006. The bank somehow learned about the 1999 tax sale sometime in the late fall or early winter of 2006, and on January 11, 2007 filed suit to set aside the tax deed—almost six years after the tax deed was delivered to the initial tax sale purchaser and recorded by the county clerk. The bank argued that due process required that it should have been given notice of the right to redeem, even though it was not a lienholder of record when the notice to redeem was required to be served under *W.Va.Code*, 11A–3–19(a).

The tax sale purchasers responded by arguing that they had complied with the notice requirements of *W.Va.Code*, 11A–3–19(a).

Because the bank was not a lienholder of record during the redemption period, the tax sale purchasers asserted that the bank was not entitled to be notified under the terms of the statute. Furthermore, the tax sale purchasers argued that this suit was time barred because of the three-year statute of limitation set forth in *W.Va.Code*, 11A–4–4(a), which allows those parties, entitled to notification of the right to redeem property following a tax sale, who did not receive notification, to bring a suit to set aside a tax deed within three years after delivery of the deed to the tax purchaser.

The bank countered with the contention that because it was not given notice of the right to redeem, it was entitled to have the tax deed set aside even after the three-year statute of limitation period barring suits to set aside tax deeds had passed. The bank argued that to hold otherwise would violate the bank's due process rights under the *United States Constitution*.

The circuit court agreed with the tax sale purchasers and granted summary judgment in their favor. In an order dated October 10, 2007, the circuit court found that the three-year statute of limitation period barred the action and did not constitute a violation of the bank's due process rights.

The bank now appeals the circuit court's summary judgment order.

## II.

### Standard of Review

"A circuit court's entry of summary judgment is reviewed *de novo*." Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). We apply the same review process as the circuit court, which is: "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 59, 459 S.E.2d 329, 336 (1995). Furthermore, "questions of law and statutory interpretation are subject to *de novo* review." Syllabus Point 1, *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995).

### III.

*Discussion*

There are two main issues raised in this appeal. The first is whether the tax sale purchaser complied with the notice provisions as set forth in *W.Va.Code*, 11A–3–19(a), and whether these notice provisions comport with due process. The second issue is whether the three-year statute of limitations period as set forth in *W.Va.Code*, 11A–4–4(a), was properly applied by the circuit court when it found that the bank's claim was time barred.

A. *Redemption Notice Requirements*

The first issue is whether the tax sale purchaser properly complied with the redemption notice provisions as set forth in *W.Va.Code*, 11A–3–19(a)(1), which states that a tax sale purchaser must:

> Prepare a list of those to be served with notice to redeem and request the clerk to prepare and serve the notice as provided in sections twenty-one [11A–3–21] and twenty-two [11A–3–22] of this article[.]

This Court has defined who "those to be served with notice to redeem" are in *Rollyson v. Jordan*, 205 W.Va. 368, 518 S.E.2d 372 (1999), stating at Syllabus Point 4:

> The persons entitled to notice to redeem in conjunction with a purchaser's application for a tax deed, pursuant to *W.Va.Code*, 11A–3–19(a)(1) (1994) (Repl.Vol.1995), are those persons who are permitted to redeem the real property subject to a tax lien or liens, as contemplated by *W.Va. Code*, 11A–3–23(a) (1995) (Repl.Vol.1995), which persons include "the owner" of such property and "any other person who was entitled to pay the taxes" thereon.

The initial tax sale purchaser prepared a list of persons who were entitled to pay taxes on the property and these people were properly served by the county clerk in January 2001. The tax sale purchaser could not have provided the bank with notice to redeem in January 2001, because the bank did not close its loan with the Halls until February 21, 2001 and did not record its deed of trust to the property until March 8, 2001.

The initial tax sale purchaser complied with the express language contained in *W.Va. Code*, 11A–3–19(a)(1). It provided a list of all of those entitled to notice in the time period specified. *W.Va.Code*, 11A–3–19(a)(1) does not require a party to supplement the list going forward or to provide additional redemption notice before the tax deed is delivered as argued by the bank. *W.Va.Code*, 11A–3–19(a)(1) clearly states the time frame in which a party must prepare its notice provisions: "At any time after the thirty-first day of October of the year following the sheriff's sale, and on or before the thirty-first day of December of the same year[.]"

The bank argues that the tax sale purchaser's failure to follow-up and update this list is a due process violation because the property has been "taken" from it in violation of the *West Virginia* and *United States Constitutions.* These due process concerns are triggered because a tax sale to a private party under West Virginia law involves "state action" requiring due process, since, to accomplish a tax sale, a private party must make use of state procedures with overt, significant assistance of state officials. *See Plemons v. Gale* 396 F.3d 569, 572 (4th Cir. 2005).[3]

The Legislature contemplated property owners' due process rights when enacting West Virginia's statutory tax scheme and sought to balance the due process rights of property owners with the need to find a cost effective, speedy means of conducting tax sales. The Legislature also sought to ensure that property owners and lienholders of record would be provided adequate notice of a property sale. The Legislature enumerated the purpose and policy behind the statutory tax scheme in *W.Va.Code*, 11A–3–1, stating in relevant part:

**3.** *Plemons* describes West Virginia's tax sale statutory scheme as follows:

> [T]he State is the initial seller of the tax lien; thereafter, the State provides the tax lien purchaser with the mechanism to provide notice to interested parties. The State also extinguishes the owner's rights to the property by issuing the tax deed to the property. In order to accomplish a tax sale, then, private parties must "make use of state procedures with the overt, significant assistance of state officials," and thus, there is state action.
>
> 396 F.3d at 573.

... the Legislature declares that its purposes in the enactment of this article are as follows: (1) To provide for the speedy and expeditious enforcement of the tax claims of the state and its subdivisions; ... (3) to secure adequate notice to owners of delinquent and nonentered property of the pending issuance of a tax deed; ... (5) to reduce the expense and burden on the state and its subdivisions of tax sales so that such sales may be conducted in an efficient manner while respecting the due process rights of owners of real property ...

This Court commented on what a party must do to comply with these due process concerns, stating in Syllabus Point 1 of *Lilly v. Duke,* 180 W.Va. 228, 376 S.E.2d 122 (1988):

> There are certain constitutional due process requirements for notice of a tax sale of real property. Where a party having an interest in the property can reasonably be identified from public records or otherwise, due process requires that such party be provided notice by mail or other means as certain to ensure actual notice.

The U.S. Supreme Court spoke to this constitutional due process issue in *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 800, 103 S.Ct. 2706, 2712, 77 L.Ed.2d 180, 188 (1983), stating:

> Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable.

Both the *Lilly* and *Mennonite* cases state that notice is mandatory for parties who are "reasonably ascertainable" or "can reasonably be identified." In the present case, the tax sale purchasers were required by *W.Va. Code,* 11A-3-19(a)(1) to provide a list between October 31, 2000 and December 31, 2000 of those persons entitled to notice to redeem. The tax sale purchasers complied with this requirement by providing this list to the county clerk on November 16, 2000. The loan was closed and the Deed of Trust was signed and entered into between the bank and the Halls on February 21, 2001.

The bank did not record its Deed of Trust until March 8, 2001. Since the bank was not a party of record at the time the list was due to be served, it was clearly not reasonably ascertainable during the statutorily specified time in which the tax sale purchaser had to furnish the list of names entitled to redeem to the county clerk.

The bank does not dispute that they were not a party of record during the statutorily-created time (October 31, 2000 to December 31, 2000) in which the tax sale purchaser provided its list of those entitled to redeem to the county clerk. However, the bank argues that the Fourth Circuit Court of Appeals has addressed this issue and found that a purchaser at a tax sale must use reasonable diligence and follow-up efforts to identify all parties entitled to notice. The bank argues that if the tax sale purchaser had used reasonable diligence, then it would have supplemented the initial list provided to the county clerk and updated the list after December 31, 2000. The bank cites *Plemons v. Gale,* 396 F.3d 569 (4th Cir.2005), in which the Fourth Circuit Court of Appeals examined West Virginia's statutory scheme for tax sales of property. *Plemons* held that reasonable diligence requires a purchaser to search all publicly available county records to determine the correct address for a party of record who was entitled to notice. 396 F.3d at 578.

The key distinction between *Plemons* and the present case is that the bank was not a party of record at the time notice was required to be sent. The Fourth Circuit found in *Plemons* that when prompt return of an initial mailing makes it clear that the original notice has failed, the party charged with notice must make reasonable efforts to follow-up and learn the correct address of the party of record. *Plemons* at 576. *Plemons* does not require a tax sale purchaser to conduct follow-up efforts, when the proper parties are served, to identify those parties who are not of record at the time the initial notices are required to be sent.

■ The tax sale purchaser in this case complied with the statutory requirements as set forth in *W.Va.Code,* 11A-3-19(a)(1). "When a statute is clear and unambiguous and the legislative intent is plain the statute

should not be interpreted by the courts, and in such a case it is the duty of the courts not to construe but to apply the statute." Syllabus Point 2, *Mingo County Redevelopment Authority v. Green*, 207 W.Va. 486, 534 S.E.2d 40 (2000). This Court is bound to apply the plain language of the statute as written, not to create additional requirements over and above those mandated by *W.Va.Code*, 11A–3–19(a).

■ We therefore hold that under *W.Va. Code*, 11A–3–19(a), a tax sale purchaser is required to provide notice to parties who are of record at any time after the thirty-first day of October of the year following the sheriff's sale, and on or before the thirty-first day of December of the same year. *W.Va. Code*, 11A–3–19(a)(1) does not require a tax sale purchaser to supplement this list going forward to discover parties who became of record after the thirty-first day of December of the year following the sheriff's sale, or to provide additional redemption notice before the tax deed is delivered.

### B. *Statute of Limitations*

We next address the statute of limitation issue. The circuit court found the bank's case was time barred under the three-year limitation period in *W.Va.Code*, 11A–4–4(a) [1994], which states:

> If any person entitled to be notified ... is not served with the notice as therein required, and does not have actual knowledge that such notice has been given to others in time to protect his interests by redeeming the property, he, his heirs and assigns, may, before the expiration of three years following the delivery of the deed, institute a civil action to set aside the deed[.]

The bank argues that applying *W.Va.Code*, 11A–4–4(a) to bar actions where jurisdictional defects exist in the tax sale is a deprivation of due process. The deed was delivered to the tax sale purchaser on May 8, 2001, and the bank did not file the instant suit until January 11, 2007. It is unquestionable then that the bank filed this suit after the expiration of three years from the delivery of the tax deed.

In *Shaffer v. Mareve Oil Corp.*, 157 W.Va. 816, 204 S.E.2d 404 (1974), this Court found that statutes barring an action to set aside a tax deed after the expiration of a three-year period following a tax sale are not violative of the due process clause of the Fourteenth Amendment to the *United States Constitution*.[4]

The bank attempts to distinguish *Shaffer* on two grounds. First it argues that the United States Supreme Court's decision in *Mennonite*, which came nine years after *Shaffer*, found that a mortgagee whose property interest was extinguished without receiving personal notice was a due process violation. The bank cites the following statement from *Mennonite* in support of their position: "Since a mortgagee clearly has a legally protected property interest, he is entitled to notice reasonably calculated to apprise him of a pending tax sale." *Mennonite*, 462 U.S. at 798, 103 S.Ct. 2706. This Court examined the *Mennonite* decision in *Lilly v. Duke*, 180 W.Va. 228, 376 S.E.2d 122 (1988), and concluded that parties of record should be provided notice by mail or other means as certain to ensure that such a party would receive actual notice. 180 W.Va. at 231, 376 S.E.2d at 125.

---

4. The Court in *Shaffer* examined *W.Va.Code*, 11A–3–32 [1931], which provided in relevant part:

> If any person entitled to be notified ... is not served with the notice as therein required, and does not have actual knowledge that such notice has been given to others in time to protect his interests by redeeming the property, he, his heirs and assigns, may, on or before October thirty-first of the third year following the sale, institute a suit in equity to set aside the deed[.]

It appears that, in 1994, the Legislature completely revised the statutes "relating to the disposition of delinquent, nonentered, escheated and waste and unappropriated lands." See 1994 *Acts of the Legislature*, Ch. 87. In these revisions, *W.Va.Code*, 11A–3–32 was rewritten and redesignated as *W.Va.Code*, 11A–4–4, which now states at 11A–4–4(a):

> If any person entitled to be notified ... is not served with the notice as therein required, and does not have actual knowledge that such notice has been given to others in time to protect his interests by redeeming the property, he, his heirs and assigns, may, before the expiration of three years following the delivery of the deed, institute a civil action to set aside the deed.

This holding in *Lilly* did not overrule the three-year statute of limitations approved of in *Shaffer*, rather it prescribed the due process rights of those who have an interest of record in property sold at a tax sale. The bank did not have an interest of record at the time the tax deed purchaser was required to provide notice to all interested parties.

The bank's second argument against *Shaffer* is that the action to set aside the deed in that case was commenced 26 years after the tax sale had occurred. In this case, the action to set aside the deed was commenced five-and-a-half years after the delivery of the tax sale deed. This argument is also unpersuasive. The Legislature has announced the purpose and policy behind its tax sale statutory scheme and has found that a proper statute of limitation is three years. This Court will not invade the Legislature's function and extend the statute to five and a half years.

■ This Court finds that *Shaffer*'s ruling with regard to the statute of limitations was not overruled or modified by the *Mennonite* or *Lilly* decisions. Consistent with this Court's interpretation of *W.Va.Code*, 11A–3–32 [1931] in *Shaffer v. Mareve Oil Corp.*, *supra*, a statute which is substantially similar to *W.Va.Code*, 11A–4–4(a) [1994], we hold the three-year statute of limitation found in *W.Va.Code*, 11A–4–4(a) [1994] relating to the institution of a civil action to set aside a tax deed does not violate the Due Process Clause of the *West Virginia* and *United States Constitutions*.

Finally we address the contention that the tax sale purchaser must be in actual possession of property acquired at a tax sale before the statute of limitation begins to run. This Court answered this issue in *Shaffer*, holding at Syllabus Point 6: "Possession of the real estate by the tax purchaser is not necessary to commence the running of the short statute of limitation provision ..."

The Court in *Shaffer* noted that "It is also the general rule that even where the short statute of limitations is applicable the tax purchaser must have possession of the land before the statute of limitations begins to run. 72 Am.Jur.2d, *State and Local Taxation*, Section 1057." *Shaffer* 157 W.Va. at 826, 204 S.E.2d at 410. However, our Court in *Shaffer* chose to depart from this "general rule" and did not require a purchaser to take actual possession of the property in order for the statute of limitations to commence running. The Court in *Shaffer*, quoting *Hood River County v. Dabney*, 246 Or. 14 at 27–29, 423 P.2d 954 at 961 (1967), explained its reasoning:

It must be borne in mind that we are not here dealing with a statute of limitations which cuts off the rights of the owner without warning. The statutes give warning to the owner that if he does not pay his taxes he may lose his land. As the dissent in *Welborn v. Whitney*, 190 Okl. 630, 642–43, 126 P.2d 263, 275 (1942) explains, every citizen 'is presumed to have known that his land was taxable, that in due course it would be assessed, a tax levy extended against it, and it would be placed on the tax rolls, that it was his duty to timely pay his taxes, that if he failed to do so his land would be offered for sale and resale at a time and placed specified in the statutes, and that if the county had to purchase it for want of bidders it would be offered for sale at a County Commissioner's sale and some one would buy it.'

"The imposition of the duty upon the defendant owner to learn what was being done to enforce the payment of taxes against his property and the limitation upon his right to attack the foreclosure decree is a legitimate exercise of legislative power in carrying out a property tax program."

*Shaffer* 157 W.Va. at 827–28, 204 S.E.2d at 411.

Other courts are split on this issue, some requiring the tax purchaser to take actual possession [5] and others, concluding as we did

---

5. *See Mayer v. L & B Real Estate*, 43 Cal.4th 1231, 78 Cal.Rptr.3d 62, 185 P.3d 43 (2008) (the statute of limitation against a jurisdictional attack on a tax deed can not begin to run while the owners of the subject property are in undisturbed possession.); *McGuire v. Rogers*, 794 So.2d 1131 (Ala.Civ.App.2000) (three-year statute of limita-

tion for redemption does not begin to run until the purchaser is in adverse possession of the land); *Scott v. Boyle*, 271 S.C. 252, 246 S.E.2d 887 (1978) (finding that a two year statute of limitations did not begin to run until the purchaser of a tax sale was in possession).

in *Shaffer*, that actual possession is not required.[6]

A statute of limitation to set a time limit for instituting a suit to set aside a tax deed is a policy matter for the Legislature to decide. We note that had actual possession of the property by the tax sale purchasers been required before the statute of limitation was triggered, then all of the parties, including the property owners and lienholders, would have had the opportunity to contest the tax sale to set aside the tax deed. Our current statutory scheme permits one to purchase land at a tax sale, and who complies with the notice requirements of *W. Va.Code*, 11A–3–19(a), to remain silent until the three-year statute of limitation period has run, and then take possession of the property. If the Legislature required tax sale purchasers to take actual possession before the statute of limitations began to run, lawsuits like the one presently before us would not be barred by *W.Va.Code*, 11A–4–4(a) [1994].

## IV.

### *Conclusion*

Based on the foregoing, the decision of the circuit court is affirmed.

Affirmed.

---

**6.** *See Poffenberger v. Goldstein,* 776 A.2d 1037 (2001) (cause of action to set aside tax sale on basis of deficient notice accrued, and applicable statute of limitations began to run on date of tax sale.); *Hood River County v. Dabney,* 246 Or. 14, 423 P.2d 954 (1967).